IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENISE PELLEGRINO,                        )
                                          )
            Plaintiff,                    )
                                          )
     vs.                                  )   Civil Action No. 10-0098
                                          )
COMMUNICATIONS WORKERS OF AMERICA,        )
AFL-CIO, CLC,                             )
                                          )
            Defendant.                    )

## MEMORANDUM

Gary L. Lancaster
Chief Judge.                                          May 18, 2011

This is an employment action under the Family Medical
Leave Act, ("FMLA"), 29 U.S.C. §2601, et seq. [Doc. No. 1].
Plaintiff Denise Pellegrino claims that her employer,
Communications Workers of America, ("CWA"), wrongfully
terminated her employment while she was out on approved FMLA
leave. Defendant CWA has filed a motion for summary judgment
[Doc. No. 27], maintaining that it terminated Pellegrino's
employment not because she was on FMLA leave, but because during
her leave she engaged in unapproved travel to Cancun, Mexico.
CWA argues that this trip violated company policy.

For the reasons that follow, we will grant the motion
for summary judgment.

I.   BACKGROUND

Unless otherwise noted, the following facts are not in dispute.   Other facts will be discussed elsewhere in this memorandum in context, where necessary.

Pellegrino was employed by CWA, a telecommunications union.   She was a member of OPEIU, the union representing clerical employees of CWA and was subject to the OPEIU collective bargaining agreement.   Pellegrino's duties included answering the phone, typing letters, bookkeeping, ordering office supplies, and taking care of office machinery.

On August 7, 2006, CWA promulgated a new Employment Policy Manual to all CWA employees, including Pellegrino, via email.[1]   The email noted that the manual included provisions that applied to all CWA employees, and that it might contain new policies not contained in the manual each employee received at the time of hire.   The email further instructs that if an employee is subject to a collective bargaining agreement, the agreement governs if there is a direct conflict between a provision in the collective bargaining agreement and a provision in the manual.   The email directed employees to consult both the

---

[1] Pellegrino disputes that she received this email.   However, record evidence confirms that CWA included Pellegrino on the distribution list.

new Employment Policy Manual and CWA's Uniform Operating Practices, as well as any applicable collective bargaining agreement, if they had questions about policies or procedures applicable to them, and to discuss any questions with a supervisor.

The Employment Policy Manual includes a Sickness and Absenteeism policy. Section I of this policy provides wage replacement for eligible employees on medical leave subject to certain restrictions. These restrictions include CWA's right to require that an employee submit to a medical examination by a CWA-designated physician at any time and provide additional information related to the reason for leave in order to ensure that the purposes of CWA's paid sick leave policy are being met. Employees accepting wage replacement are also required to remain in the immediate vicinity of their homes during the period of their sick leave. There are several limited exceptions to this requirement including if the employee needs medical treatment or must attend to ordinary and necessary activities directly related to personal or family needs. An employee may also leave the immediate vicinity of her home if she receives written permission from CWA to travel. CWA reserves the right to terminate the wage replacement benefits if it determines that

3

the employee has engaged in conduct inconsistent with the benefit. However, CWA agrees to provide employees notice of such action and an opportunity to present evidence supporting the use of the benefit.

CWA's Sickness and Absenteeism policy explicitly states that the company provides unpaid leave in accordance with the provisions of the FMLA and that unpaid FMLA leave runs concurrently with any separate wage replacement benefit the employee might receive. The policy further notes that CWA employees subject to collective bargaining agreements should refer to those agreements to determine how the Sickness and Absenteeism policy will apply in their situations.

Pellegrino was subject to a specific collective bargaining agreement as a member of OPEIU. This agreement states that CWA will comply with the provisions of the FMLA, which provides unpaid medical and family leave to eligible employees. The agreement also includes a wage replacement policy called Sick Pay Treatment. Under this policy, an employee who is ill for more than four (4) days and who has worked for the company for at least two (2) years is eligible for wage replacement for full wages for seven (7) weeks, and

then half wages for thirteen (13) weeks. An employee may receive wage replacement for the first four (4) days of illness if they have accrued Incidental Sick Leave. Wage replacement is voided under the Sick Pay Treatment policy if the employee fails to furnish satisfactory evidence for the underlying illness if requested to do so by CWA.

On August 12, 2008, Pellegrino informed CWA's Assistant Human Resources Administrator, Marilyn Klinger, that she needed to undergo a hysterectomy. CWA responded by sending Pellegrino a letter describing her rights and obligations related to unpaid leave under the FMLA. This letter noted that the process of medical certification for FMLA leave was separate from the process involved in being eligible for wage replacement under CWA's sick leave policy, but that Pellegrino was eligible for the FMLA leave and would be required to substitute paid leave under CWA's sick leave policy for the period of time she qualified for those benefits.

CWA approved Pellegrino's FMLA leave. Pellegrino scheduled her hysterectomy surgery for October 2, 2008 and both her unpaid FMLA leave and her sick leave pay began that day.

On October 16, 2008, Pellegrino traveled to Cancun, Mexico where she stayed until October 23, 2008. There is no

5

evidence that Pellegrino informed CWA that she would be out of the country for a week, or that Pellegrino requested vacation time for the trip or permission to travel. After her return, CWA became aware that Pellegrino traveled to Cancun and asked her to come to a meeting on November 3, 2008.

Pellegrino attended that meeting along with her OPEIU Representative, who participated by phone. Marge Krueger, CWA's Administrative Director in Pittsburgh, asked Pellegrino if she traveled while on FMLA leave, and Pellegrino admitted that she had. Krueger sent a letter to Pellegrino later that day notifying her that CWA had decided that traveling to Cancun, Mexico while out on FMLA and disability leave was a violation of CWA's leave policies and work rules and that Pellegrino's employment was terminated.

Almost two years later and well after Pellegrino filed suit, Pellegrino's treating physician submitted a letter stating that due to her surgery, Pellegrino was not physically able to return to work until November 13, 2008, but that her trip to Cancun was not inconsistent with her recovery or with any medical restrictions placed on her during that time.

6

## II. LEGAL AUTHORITY

### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

"[T]he mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) (internal quotation marks omitted). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. at 248. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of plaintiff's cause of action. Instead, defendant need only point out the absence or insufficiency of

7

plaintiff's evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of her cause of action. If plaintiff fails to provide such evidence, then she is not entitled to a trial, and defendant is entitled to summary judgment as a matter of law. Anderson, 477 U.S. at 256-57.

It is on this standard that the court has reviewed the motion for summary judgment and the response thereto.

b. FMLA

Congress promulgated the FMLA in 1993 to accommodate "the important societal interest in assisting families[ ] by establishing a minimum labor standard for leave." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999). The FMLA grants eligible employees the right to take up to twelve job-protected workweeks of leave in any twelve-month period if, inter alia, a "serious health condition ... makes the employee unable to perform the functions of the position of such employee." 29

U.S.C. § 2612(a)(1)(D). To protect that right, the FMLA contains two distinct provisions. Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). First, it makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). A claim arising under that provision is known as an "interference" claim. Callison, 430 F.3d at 119. Second, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). A claim under that provision is referred to as a "retaliation" or "discrimination" claim. Callison, 430 F.3d at 119.

Plaintiff pled an interference claim in her complaint. And in her brief in opposition to defendant's motion for summary judgment, she explicitly confirms that she seeks relief only under the interference theory. The Court of Appeals for the Third Circuit has allowed plaintiffs to proceed under both theories of recovery after a termination. See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009) (holding that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well

9

as retaliation against the employee"). Here, however, if plaintiff would like to limit herself to only one theory of recovery, then this court will not act to enlarge the scope of her complaint.

To prove an interference claim, a plaintiff must show: (1) that she was entitled to benefits under the FMLA; and (2) that her employer illegitimately prevented her from obtaining those benefits." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007).

## III. DISCUSSION

Defendant has moved for summary judgment on Pellegrino's interference claim contending that her FMLA entitlements did not include protection from termination for a reason unrelated to her FMLA leave. According to CWA, the FMLA does not shield Pellegrino from an employment action the company would have taken against her irrespective of her status under the FMLA, such as enforcing a restriction on unapproved travel that would have applied whether Pellegrino had been out on FMLA leave or non-FMLA covered sick or disability leave.

10

Pellegrino responds that her claim should survive summary judgment because a reasonable jury could find that the travel restrictions in CWA's Sickness and Absenteeism policy did not apply to her because her sick leave was regulated by the Sick Pay Treatment policy outlined in the OPEIU collective bargaining agreement, which did not include a travel restriction.

She also argues that even if the Sickness and Absenteeism policy did apply to her, CWA interfered with her rights under the FMLA because: (1) she had no notice that the policy existed; (2) CWA failed to ensure that she was aware of the policy by including it with the packet of information it provided her outlining her FMLA rights; (3) her travel was not inconsistent with her recovery from major surgery, and CWA wrongly assumed that she was abusing her leave; (4) CWA improperly relied on information it received from an external source regarding the fact that Pellegrino traveled to Cancun; and (5) the policy did not explicitly state that the consequences of traveling while on FMLA leave could include termination.

Drawing all inferences in favor of the non-moving party, we find that Pellegrino has not demonstrated that there

11

is a genuine issue of material fact in dispute and we find that no reasonable jury could return a verdict for Pellegrino on her FMLA interference claim. Therefore, we grant CWA's motion for summary judgment.

As stated above, to prove an interference claim, a plaintiff must show both that she was entitled to benefits under the FMLA and that her employer illegitimately prevented her from obtaining those benefits. Sarnowski, 510 F.3d at 401.

Pellegrino's burden, then, is to prove that she was entitled to FMLA rights and that her employer failed to provide her with those entitlements. Callison, 430 F.3d at 119-20 ("[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA"). There is no dispute that Pellegrino has proven that she was entitled to avail herself of the FMLA's unpaid leave provisions. She was scheduled to undergo major surgery and properly submitted her leave request and documentation supporting the fact that she was suffering from a serious medical condition qualifying her for leave. There is also no dispute that CWA approved her FMLA leave.

What is in dispute is whether CWA illegally prevented Pellegrino from exercising her rights under the FMLA by terminating her employment during the course of her leave. However, Pellegrino has failed to submit evidence that demonstrates that CWA acted improperly. No employee is entitled to a right, benefit, or position to which the employee would not have been entitled had she not taken FMLA leave. 29 U.S.C. § 2614(a)(3)(B). This means that if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, then there is no right to reinstatement. 29 C.F.R. § 825.216(a)(1); Sarnowski, 510 F.3d at 403. See also Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005); Bones v. Honeywell Int'l., Inc., 366 F.3d 869, 877 (10th Cir. 2004); Arban v. West Publ'g Corp., 345 F.3d 390, 401 (6th Cir. 2003).

Further, the FMLA does not shield an employee from termination if the employee was allegedly involved in misconduct related to the use of the FMLA leave. In fact, the Court of Appeals for the Third Circuit has made it clear that FMLA entitlements in no way prevent an employer from instituting policies to prevent the abuse of FMLA leave, so long as these policies do not conflict with or diminish the rights provided by

13

the FMLA.  Callison, 430 F.3d at 120-121.  In Callison, the
Court upheld an employer's policy requiring that: (1) employees
absent on sick leave stay at home during working hours unless
they leave home for a reason related to the cause of absence;
(2) employees call the employer upon leaving and returning home;
and (3) employees be subject to calls or visits by the employer.
Id. at 118, 120-121.  In making this ruling the court stated,
"[T]here is no right in the FMLA to be 'left alone.'  Nothing in
the FMLA prevents employers from ensuring that employees who are
on leave from work do not abuse their leave ...".  Id.

          Here, CWA claims to have terminated Pellegrino because
she violated CWA's Sickness and Absenteeism policy.  Under that
policy employees out on FMLA or sick leave would continue to
receive their wages.   But, such employees were required to
remain in the immediate vicinity of their homes during the leave
unless the employee needed medical treatment, needed to attend
to ordinary and necessary activities directly related to the
employee's personal or family needs, or had received written
approval to travel.   This policy appears to serve several
legitimate purposes.   First, it provides the benefit of wage
replacement, something not even contemplated by the FMLA, which

affords CWA employees the opportunity to take sick leave or FMLA leave without suffering a loss of pay. It also serves to make certain that the privilege of paid sick leave is not abused by CWA employees.

This policy does not discourage, nor prevent, CWA employees from taking FMLA leave. To the contrary, providing a wage supplement could encourage employees to avail themselves of their unpaid leave rights under the FMLA. Pellegrino has argued, however, that she was not covered by the CWA Sickness and Absenteeism policy, but only under the policy outlined in the OPIEU collective bargaining agreement. We find that the CWA Sickness and Absenteeism policy did apply to Pellegrino, and that CWA's decision to terminate Pellegrino for her violation of this policy was within CWA's discretion.

CWA provided clear guidance to its employees in its August 7, 2006 email which instructed employees that they were subject to both the CWA Employment Policy Manual and their respective collective bargaining agreements. The only exception to this rule was in the case of a direct conflict between provisions in the Manual and a collective bargaining agreement. In that case, the provision in the collective bargaining agreement would govern. No such conflict is in evidence here.

The OPIEU collective bargaining agreement applicable to Pellegrino speaks only to establishing and maintaining eligibility for sick leave pay. The agreement is silent as to what activities the employee may or may not undertake while on leave. As such, there can be no conflict between the collective bargaining agreement, which is silent on the issue, and the Sickness and Absenteeism policy, which specifically discusses limitations on the employee's activities during leave. Accordingly, CWA's Sickness and Absenteeism policy applied to Pellegrino.[2]

Pellegrino further argues that even if we find that the Sickness and Absenteeism policy applied to her, CWA's enforcement of the policy by termination interfered with her rights under the FMLA. We will examine Pellegrino's contentions one-by-one.

---

[2] Even if this court were to have decided that the policy did not apply, Pellegrino's case would still not survive summary judgment. No reasonable jury could find that the absence of a policy to the contrary indicates that an employee is free from all restrictions while out on medical leave. Further, no reasonable jury could find that an employer acts illegitimately or interferes with FMLA entitlements when that employer terminates an employee for taking a week-long vacation to Mexico without at least notifying the employer that her doctor had approved the travel or that she would be out of the country.

First, no reasonable jury could find that Pellegrino did not have notice of the policy. There is record evidence that CWA disseminated its policies to its employees, and that it encouraged employees to make inquiry if there was any question about if and how a policy might apply. Pellegrino cites to no evidence to the contrary, other than her own conclusory statement that she did not receive the CWA Sickness and Absenteeism policy, despite the fact that it was distributed to all employees. Moreover, no reasonable jury could find that CWA had an obligation to re-alert Pellegrino to its separate sick leave and pay policies when it issued her the mandated FMLA notifications. Although the FMLA imposes certain notice requirements as part of the FMLA leave process, there is no rule that obligates CWA to distribute more than the mandated FMLA notifications at the time of leave. See 29 C.F.R. §825.300(c).

Likewise, no reasonable jury could find that CWA interfered with Pellegrino's FMLA rights because of her contention that the travel was not inconsistent with her recovery. The issue here is whether CWA terminated Pellegrino for a legitimate reason not related to her FMLA leave. Pellegrino's assertion would only be material to this analysis if CWA had terminated her specifically and only because of her

abuse of FMLA leave.[3]  But CWA's termination decision included
its concern that Pellegrino had violated a separate policy by
taking a trip while accepting sick leave pay.  The opinion of
Pellegrino's treating physician, submitted several years after
she took the trip and only after she initiated litigation, is
simply not germane to whether Pellegrino broke a workplace
policy that forbid unapproved travel while receiving sick leave
pay.

Additionally, no reasonable jury could find that CWA
interfered with Pellegrino's FMLA rights because it has not been
forthcoming about the original source of its information that
Pellegrino had traveled to Cancun.  The source of CWA's
information regarding Pellegrino's unapproved travel is
immaterial.  When confronted, Pellegrino was honest about her
unapproved travel.  Therefore, there can be no suggestion that
CWA improperly relied on incorrect information in deciding to
enforce its Sickness and Absenteeism policy.  Further, absent

---

[3] Although such a contention may have been material if CWA had terminated
Pellegrino solely because of her alleged abuse of her FMLA leave, this court
notes that some courts have held that that an employer need not prove abuse
of FMLA leave, but must merely have an honest suspicion of such abuse before
being entitled to terminate. Kariotis v. Navistar Intern. Transp. Corp., 131
F.3d 672, 681 (7th Cir. 1997).  However, we need not address that issue here.

evidence that CWA terminated Pellegrino because she was on FMLA leave, no cause of action lies under the FMLA against CWA for investigating potential abuse of its sick leave policies. See Stephenson v. JLG Industries, Inc., No. 1:09-CV-1643, 2011 WL 1304625 at *4 (M.D. Pa. Mar. 31, 2011) (denying summary judgment on an interference claim where employer was tipped off by a co-worker and then investigated whether employee had used FMLA leave to keep an appointment to have his car repaired).

Lastly, no reasonable jury could find that CWA interfered with Pellegrino's FMLA rights on the grounds that CWA's response to her unapproved travel while on FMLA leave was too harsh, or not expressly provided for in CWA policy. Pellegrino has failed to allege that she was anything other than an at-will employee or to point to any provisions in her collective-bargaining agreement which suggest that she has any right to employment greater than an at-will employee.[4] Thus, outside of any clear intent to the contrary, or any indication of a statutorily impermissible purpose, CWA was free to

---

[4] The court notes that plaintiff attached only portions of her OPIEU collective bargaining agreement, as well as only portions of CWA's Employment Manuel. However, as the non-movant at summary judgment, the burden is on plaintiff to identify affirmative evidence of record which supports her cause of action. Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).

19

terminate Pellegrino for any reason or no reason at all. Erdman
v. Nationwide Ins. Co., 510 F.Supp.2d 363, 375-76 (M. D. Pa.
2007); Violanti v. Emery Worldwide A-CF Co., 847 F.Supp. 1251,
1258 (M.D.Pa.1994) (noting that in Pennsylvania "there is a very
strong presumption of at-will employment relationships and the
level of proof required to overcome this presumption is
arduous"); Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511,
512 n. 1 (Pa. 2005).

Ultimately, CWA's choice to enforce its Sickness and
Absenteeism policy was a legitimate exercise of employer
prerogative separate from Pellegrino's use of FMLA leave.
Therefore, no reasonable jury could find that CWA's choice to
terminate Pellegrino under the Sickness and Absenteeism policy
constituted FMLA interference.


IV.  CONCLUSION

For the foregoing reasons, the defendant's motion for
summary judgment [Doc. No. 27] will be granted.

An appropriate order follows.


20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENISE PELLEGRINO,              )
                                )
            Plaintiff,          )
                                )
    vs.                         )       Civil Action No. 10-0098
                                )
COMMUNICATIONS WORKERS OF AMERICA, )
AFL-CIO, CLC,                   )
                                )
            Defendant.          )

## ORDER

AND NOW, this _18_ day of May 2011, upon consideration of defendant's Motion for Summary Judgment, [Doc. No. 27], and accompanying briefs, IT IS HEREBY ORDERED that defendant's motion is GRANTED.

BY THE COURT:

_____ J.

Cc:  All counsel of Record